UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

POP DADDY POPCORN, LLC,

               Plaintiff,

                                   Case No.  23-12994

vs.                                HON.  GEORGE CARAM STEEH

UNIFIED FLEX PACKAGING
TECHNOLOGIES, LLC and
UNIVIED FLEX PACKAGING
TECHNOLOGIES,

               Defendants.

_____/

ORDER DENYING DEFENDANTS' MOTION
TO DISMISS AMENDED COMPLAINT (ECF NO. 18)

      This case arises out of plaintiff Pop Daddy Popcorn, LLC's acquisition

of used equipment, and services related to the installation of such

equipment, to operate a popcorn manufacturing line at its facility. Central to

this lawsuit is the contract between Pop Daddy and defendants Unified Flex

Packaging Technologies, LLC and Unified Flex Packaging Technologies.

The matter is before the Court on defendants' motion to dismiss plaintiff's

First Amended Complaint pursuant to Federal Rule of Civil Procedure

12(b)(1) and 12(b)(6). Upon a careful review of the written submissions, the

Court deems it appropriate to render its decision without a hearing pursuant to Local Rule 7.1(f)(2). For the reasons given below, defendants' motion to dismiss is denied.

BACKGROUND

I.    <u>Procedural Background</u>

Plaintiff filed its initial complaint on November 27, 2023, invoking the Court's diversity jurisdiction. ECF No. 1. Defendants filed a motion to dismiss, maintaining that plaintiff's damages are precluded by a liability waiver in the contract such that plaintiff necessarily failed to meet the $75,000 damages threshold required by 28 U.S.C. § 1332(a). ECF No. 13. Plaintiff filed an Amended Complaint in response to the motion to dismiss as permitted under Fed. R. Civ. P. 15(a)(1)(B). ECF No. 15. In the Amended Complaint, plaintiff expanded its allegations as to the amount in controversy and also asserted federal question jurisdiction under the United Nations Convention on Contracts for the Sale of International Goods, May 1980, S.Treaty. No. 9, 98th Cong., 1st Sess.22 (1983), 19 I.L.M. 671(1983), 19 I.L.M. 671 (reprinted at U.S.C.S. Int.'l Sale Goods).

On April 30, 2024, defendants filed a motion to dismiss plaintiff's Amended Complaint. ECF No. 18. Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, or in the alternative

- 2 -

under Rule 56(a), arguing plaintiff's claims fail under the express waiver of liability and damages contained in the parties' contract. Defendants continue to seek dismissal pursuant to Rule 12(b)(1) due to lack of subject matter jurisdiction because the damages waiver precludes the possibility of exceeding the $75,000 amount in controversy required for diversity jurisdiction.

II.   Factual Background

Plaintiff Pop Daddy Popcorn, LLC (Pop Daddy) is a Michigan limited liability company with a principal place of business in Livingston County, Michigan. All of plaintiff's members are domiciled in Michigan.

Plaintiff names two defendants in its Amended Complaint. Unified Flex Packaging Technologies, LLC (UFLLC) is a Delaware limited liability company which is no longer in good standing as of June 1, 2022. UFLLC changed its name to "American Packaging & Plant Equipment, LLC" on June 9, 2021. UFLLC's website lists a Corporate Office in Ontario, Canada, regional offices in British Columbia and New Jersey, and a USA Plant & Display Center in Wisconsin. Documents on file with the State of Wisconsin indicates a principal office in Appleton, Wisconsin, and that its certificate/registration was revoked on October 14, 2023. Defendants have not disputed plaintiff's pleading, upon information and belief, that no

members of UFLLC are domiciled in Michigan. The other defendant, Unified Flex Packaging Technologies (UFCORP), is a Canadian federal corporation located in Cambridge, Ontario, Canada.

Exhibits attached to the Amended Complaint show that UFLLC and American Packaging & Plant Equipment LLC were founded in the same year, engage in similar business endeavors, and have the same fax number. They both identify the same "Primary Location" in Cambridge, Ontario as UFCORP. *See* ECF No. 15-1, 15-2, 15-4, 15-5. Plaintiff names both defendants in its lawsuit because of the lack of clarity over their current legal status and responsibility for plaintiff's claims.

The contract at issue consists of several documents including correspondence and invoices. A document titled "Scope of Work – Popcorn line move", details the project. The first section describes tasks to be undertaken by defendants, including uninstalling machines located at non-party Golden Crown's site, creating a report of issues that need to be fixed, and loading the machines on a truck so they can be moved to plaintiff's site. At plaintiff's site, defendants' tasks include installing, integrating, and adjusting the machines; training employees; listing required repairs and maintenance (for which plaintiff is to pay any associated costs); and

resolving any "bugs" to the "best of their capability." ECF No. 15-6, PageID.289-90.

The "Scope of Work" document next describes the "Deal Structure." Defendants are to create an invoice for plaintiff to purchase the machines; a finance company is to issue payment to defendants; defendants are to complete installation and training at plaintiff's facility; and defendants are to pay Golden Crown the sale price for the machines, retaining any amount due to defendants. ECF No. 15-6, PageID.290.

The third part of the document addresses payment terms and waivers of liability. Plaintiff is to pay defendants the $175,000 purchase price for the machines and $27,043 for the services to be performed by defendants. Plaintiff also agrees to pay an additional fee of 10% of the purchase price to defendants for facilitating the financial transaction between the finance company, plaintiff and Golden Crown. This amounts to $17,500. The total amount to be paid by plaintiff is $219,543. ECF No. 15-6, PageID.291.

Appearing after the payment terms are three liability disclaimers. First, defendants disclaim liability for property damage, machine damage, losses due to time lost, loss of property, loss of contracts, and any other losses due to delay or disruption. Second, defendants state they are "not guaranteeing or making any promises to deliver a[n] operational machine

without issues." Third, plaintiff and Golden Crown, as buyer and seller, "agree to not hold [defendants] liable for any damages or losses of any kind from any situation of this project and after." ECF No. 15-6, PageID.291.

Plaintiffs allege that despite paying the full contract price of $224,543 to defendants, defendants failed and refused to perform most of their contractual obligations. These obligations include:

1. planning and managing the project;

2. project leadership by Defendants' senior management;

3. provision of tools on site that were needed;

4. provision of a team of 1-3 people for installation of machines, integration of machines, start-up, introduction of product, film and shadow production, and adjusting machines accordingly along with training employees;

5. knowledge transfer and know-how of the equipment;

6. provision of list of parts to be repaired or replaced, recommendations as to any maintenance to be performed;

7. working through the bugs report to the best of Defendants' capability and resolving issues;

8. troubleshooting and operation of line without product; and

9. creation of report of any issues that need to be fixed.

Plaintiff's Amended Complaint asserts four counts: breach of contract, unjust enrichment, money had and received, and constructive trust. Damages are calculated in as $49,453.00 paid to defendants for services not rendered, $3,550.00 to reimburse plaintiff's moving expenses for equipment defendants failed to move in conformance with the parties' contract; and $46,226.25 plaintiff paid to third parties to cover the costs of goods and services not provided by defendants, for a total of $98,229.25. Plaintiff additionally seeks an amount in excess of $100,000 representing lost sales and profits resulting from defendants' delays. ECF No. 15, PageID.267.

## ANALYSIS

I.   Subject Matter Jurisdiction

A.   Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal when the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Proper jurisdiction is a requirement in determining the validity of a claim, and as such, Rule 12(b)(1) motions must be considered prior to any other challenges." *Lemke v. H&R Block Mortg. Corp.*, 2012 WL 715894, at *1 (E.D. Mich. Mar. 6, 2012) (citing *Bell v. Hood*, 327 U.S. 678 (1946)).

When jurisdiction is challenged under this rule, the burden is generally on the plaintiff to prove that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

A motion to dismiss pursuant to Rule 12(b)(1) may take the form of either a facial or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack is a "challenge to the sufficiency of the pleading itself." *Id*. On such a motion, the court must take the material allegations of the complaint as true and construe them in the light most favorable to the non-moving party. *Id*. "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, *see Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990), and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*.

In this case, defendants bring a factual challenge to subject matter jurisdiction, so plaintiff bears the burden of proving jurisdiction to survive the motion to dismiss. Any factual findings made for the purpose of deciding the jurisdictional issue are not binding in future proceedings. *Id*.

B.     Diversity Jurisdiction

For diversity jurisdiction, 28 U.S.C. § 1332 requires complete diversity between the parties, plus an amount in controversy exceeding "the sum or value of $75,000, exclusive of interest and costs." See 28 U.S.C. § 1332(a). In their motion, defendants do not contest diversity of citizenship. However, they do argue that the amount in controversy in this case is less than the jurisdictional limit because the damages waiver in the contract necessarily means plaintiff cannot recover any damages from defendants.

Generally, "the amount claimed by a plaintiff in his complaint determines the amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount." *Rosen v. Chrysler Corp.*, 205 F.3d 918, 920-21 (6th Cir. 2000). A plaintiff cannot satisfy the "legal certainty" test when his or her damages are limited by "a statutory or contractual cap." *Allstate Ins. Co. v. Renou*, 32 F. Supp. 3d 856, 860 (E.D. Mich. 2014); *see also Chirhoclin, Inc. v. Grand River Aseptic Mfg., Inc.*, No. 1:17-cv-993, 2019 WL 13100196 at *3 (W.D. Mich. June 20, 2019) (noting that while the Sixth Circuit has not addressed the issue of a contractual limit on liability, "[t]he majority of circuits courts have held that where an enforceable contract contains a limitation on liability below the diversity

jurisdiction threshold amount, federal courts lack subject-matter jurisdiction over the controversy").

The starting place for issues involving a contract is the terms of the contract. *See, e.g., Hastings Mut Ins Co v Safety King, Inc.*, 286 Mich App 287, 292 (2009) ("If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law."). As it relates to releases, "'validity . . . turns on the intent of the parties. A release must be fairly and knowingly made to be valid. If the language of a release is clear and unambiguous, the intent of the parties is ascertained from the plain and ordinary meaning of the language.'" *Brintley v. St. Mary Mercy Hosp.*, 904 F. Supp. 2d 699, 723–25 (E.D. Mich. 2012), aff'd, 545 F. App'x 484 (6th Cir. 2013) (quoting *Batshon v. Mar–Que Gen. Contractors, Inc.*, 463 Mich. 646, 650 n. 4 (2001)).

A party may contract against liability for damages caused by ordinary negligence by obtaining a release. *Paterek v. 6600 Ltd*, 186 Mich. App. 445, 448 (1990). However, "[p]ublic policy precludes such contractual waivers for gross negligence or intentional misconduct . . . ." *Meyer v. Oakland Cmty. Coll. Bd. of Trustees*, No. 350234, 2020 WL 6236543, at

*12 (Mich. Ct. App. Oct. 22, 2020) (citing *Klann v. Hess Cartage Co.*, 50 Mich. App. 703, 709 (1973)).

In this case, the contract limits liability for property damage, machine damage, loss of time, loss of property, loss of contracts, losses due to delay or disruption, failure to deliver an operational machine without issues, and "any damages or losses of any kind from any situation of this project and after." ECF No. 15-6, PageID.291. Defendants point out that the parties are sophisticated business entities who voluntarily entered the contract containing the broad and comprehensive waiver and release. In addition, they point out that there is no indication of duress, coercion, or misrepresentation in the formation of the contract, suggesting that the waiver was agreed upon freely by both parties.

Plaintiff does not challenge the formation of the contract, but rather attacks the damages waiver as against public policy to the extent defendants seek to enforce it as to damages caused by an intentional or grossly negligent breach. In the Amended Complaint, plaintiff asserts damages arising from defendants' intentional failure and refusal to perform certain duties they agreed to perform in the contract. Specifically, plaintiff alleges that damages are a result of defendants "failing and refusing" to perform multiple specified duties under the contract and that "[t]hese

failures and refusals cannot possibly have been the result of neglect, mistake, or inadvertence – they were deliberate and intentional, or at best, grossly negligent." Amended Complaint ¶¶ 19-20; ECF No. 15, PageID.265.

In response, defendants contend that the addition of terms such as "intentional" and "gross negligence" in the Amended Complaint are conclusory allegations that fail to sufficiently state a claim for relief. However, in addition to the allegations in the Amended Complaint, plaintiff attaches affidavits from its Plant Manager Brian Blossfeld and Facilities Manager Brett Dore to demonstrate that defendants deliberately refused to perform their duties under the contract. Blossfeld and Dore describe making multiple attempts to obtain defendants' assistance in setting up the popcorn equipment. There were phone calls and a site visit that did not result in operation of the line or instruction to plaintiff about how the equipment worked. Another visit was set up for July 28, 2023, whereby defendants' General Manager Canada and Vice President of Business Development were to come to plaintiff's facility to complete the setup of the popcorn equipment. On the morning of the scheduled visit, defendants cancelled and said they would reschedule. However, defendants did not

reschedule nor did they respond to any further inquiries made by plaintiff. ECF No. 20-14, 20-15, 20-17.

Plaintiff's allegations that defendants deliberately failed and refused to perform a substantial portion of their contractual responsibilities, including sending a team to install, integrate, adjust and start up the machines; training plaintiff's employees on the equipment; providing a parts and maintenance list; troubleshooting and operating the machine line; and creating a report of issues to be fixed, are not conclusory. The allegations, along with supporting evidence, sufficiently plead intentional, deliberate or grossly negligent breaches, which would invalidate the contractual damages waiver as against public policy. Therefore, it is not a legal certainty that plaintiff cannot recover the damages it seeks in the Amended Complaint. The Court is satisfied it has jurisdiction to hear the case. Defendants' 12(b)(1) motion to dismiss for lack of subject matter jurisdiction stemming from a failure to meet the amount in controversy is denied.

II.   Dismissal for Failure to State a Claim or Summary Judgment

A.   Standard of Review

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief

- 13 -

that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted).

"Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a motion to dismiss, the court may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

B.   Unavailability of Damages Under Contract

Defendants argue the Amended Complaint should be dismissed for failure to state a claim, or alternatively summary judgment should be granted in their favor, because the contractual damages waiver prevents plaintiff from recovering any damages.

As discussed in relation to the 12(b)(1) motion, a party may contract against liability for damages caused by ordinary negligence, but public policy precludes contractual waivers for gross negligence or intentional misconduct. For the reasons stated above, the Court finds that plaintiff has adequately alleged a claim for which relief can be granted where it asserts that defendants' breach of the parties' contract was intentional or grossly negligent. Whether defendants breached the contract, and the nature of any such breach, present issues of fact that are not ripe for decision prior to the parties engaging in discovery.

CONCLUSION

IT IS HEREBY ORDERED that defendants' motion to dismiss (ECF No. 18) is DENIED.

So ordered.

Dated:  July 25, 2024

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record
on July 25, 2024, by electronic and/or ordinary mail.

s/LaShawn Saulsberry
Deputy Clerk